IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Lester Thomas,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>　　　　　Defendant. | No. 1:06-cv-00832-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

## PRELIMINARY STATEMENT

1.   This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment.  In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

## JURISDICTION

2.   This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981").  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

1

## PARTIES

3. Lester Thomas was a Black employee of NGSS who was employed by NGSS for over 29 years. Mr. Thomas retired from NGSS in or around 2002.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian. It is located in Pascagoula, Mississippi. It is an employer for purposes of Title VII. On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit: an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

2

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race. The case was assigned a case number of 1:01-CV-111(G)(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;

   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

3

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Lester Thomas's severed action was assigned the case number of 1:06-cv-00832-LG-RHW.

## FACTUAL STATEMENT

## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

a) By failing to treat Blacks on an equal basis with Whites.

b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting positions have

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

4

inured to the determent of Black employees historically.

 f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

 g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

 h) By demoting Black employees at a disproportionate rate as compared to White employees.

 i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

 j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

 k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

 l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF
## TITLE VII AND § 1981

20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

5

21. Plaintiff has applied for promotive positions on numerous occasions. Plaintiff was qualified for the positions for which he applied, but was not selected. The means used to determine that plaintiff would not be selected have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures. This includes following instances:

   a) In or around 1976, plaintiff applied for an Inspector Surface position for Hull, a position for which plaintiff was qualified, but for which he was not selected because of his race.

   b) In or around 1977 or 1978, plaintiff applied for a supervisor position, a position for which plaintiff was qualified, but for which he was not selected because of his race. Plaintiff was informed at that time by his White supervisor, Ron Cochran, that plaintiff would never be promoted because he had filed a complaint with the EEO office. Plaintiff later discovered that a Black co-worker had filed an EEO complaint, additionally naming plaintiff as an employee who had been discriminatorily denied promotional opportunities.

   c) In or about 1995 or 1996, plaintiff applied for Quality Assurance Inspector, a position for which plaintiff was qualified, but for which he was not selected because of his race.

   d) In or about 1996, plaintiff applied for the position of supervisor, a position for which plaintiff was qualified, but for which he was not selected because of his race.

   e) In or about 2000, plaintiff applied for an Accuracy Control position, a position for which plaintiff was qualified, but for which he was not selected because of his race. Plaintiff was informed that he was not selected for the position. Later that year, however, plaintiff was promoted to the position. Plaintiff is informed and believes that he was promoted to the position only after intervention from upper management and/or the company's EEO personnel.

22. Plaintiff has worked in a department at NGSS utilizing a position entitled

Plaintiff Lester Thomas's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00832-LG-RHW

6

"leaderman" or "half-hat."  Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist; however, plaintiff is aware that numerous White employees have been selected for the position of "leaderman" or "half-hat" without having made any such interest known.  Plaintiff's supervisors knew that he was interested in serving as a work leaderman, and, in fact plaintiff served in that position on more than one occasion.  Plaintiff, however, was repeatedly demoted from that position without explanation.  Plaintiff was never informed in any way that he was not qualified for the position of "leaderman" or "half-hat."  The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

23. Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have been promoted.  Plaintiff has observed that the availability of positions was typically not publicized, and, even when openings were made known, that management in his department appeared to have already selected certain persons for the positions in question.  Plaintiff has observed White employees being placed in a position and carrying out the job duties of the position prior to the publicizing of the open position.  Plaintiff has also, on several occasions, been told, when he inquired about applying for an open position that the position had already been filled.  Plaintiff has observed that promotional opportunities are correlated with friendships and familial relationships.  Plaintiff has observed that White workers with little or no experience are hired and quickly promoted.  Plaintiff has been required to train White workers with significantly less experience and seniority, who were then either promoted over him or given promotional positions in other departments.  Plaintiff in fact became the *de facto* supervisor for crews when he worked for supervisors who had so little experience that they could not properly supervise the crew themselves; plaintiff's co-workers would direct questions to him and seek guidance from him, and plaintiff would undertake tasks such as reading blueprints for supervisors who could not.  These experiences, as well as plaintiff's experiences with

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

7

promotions and demotions, further led plaintiff to believe that application for promotional opportunities would be futile. Therefore, plaintiff has not applied for promotive positions for which he was qualified, and plaintiff was not selected for promotion to any such position. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

24. Plaintiff has been demoted at times during which similarly situated White co-workers with fewer years of seniority were not demoted. Plaintiff not informed of the reason why he was demoted while White co-workers with fewer years of seniority were not. This includes the following instances:

    a) Plaintiff was demoted from work leaderman back to shipfitter in 1978. Plaintiff was informed that he was being demoted as part of a reduction in work force; plaintiff observed that the majority of the employees demoted at that time were Black.

    b) Plaintiff was demoted from work leaderman to shipfitter in August 1996. Plaintiff's supervisor, A.S. Helton, White male, informed plaintiff that when Helton got promoted he would promote plaintiff to a supervisor position because plaintiff could read blueprints and Helton could not. Instead, Helton was promoted to foreman, and plaintiff was demoted from work leaderman to shipfitter, while a White male was given the supervisor position. Plaintiff had more seniority than both Helton and the White employee who was promoted.

    c) After finally being promoted to the accuracy control position in 2000, plaintiff was forced to return to the work leaderman position, which he held until he retired. In the accuracy control position, plaintiff suffered extremely disparate treatment as compared to his White co-workers. The only two Black employees in the group, including plaintiff, were selected for a job in Gulfport that no one in the group found desirable or volunteered to undertake. During the Gulfport

Plaintiff Lester Thomas's Complaint for    8
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

assignment, plaintiff was required to do twice as much work as similarly situated White co-workers, including work that was incredibly dirty. Plaintiff believes that, but for his race, his working conditions would not have been made so unbearable. Plaintiff felt that he had no reasonable option other than to return to shipfitting and the work leaderman position.

25. Plaintiff has received less compensation than similarly situated White co-workers for doing the same job. Plaintiff has been made aware of the discrepancy by observing the differences in compensation revealed through comparison of paychecks. This includes the following instances:

    a) While plaintiff worked in accuracy control from in or around 2000 to in or around 2002, he saw his similarly situated White co-workers paychecks and observed that they were paid more than he for doing precisely the same work.

26. Plaintiff has made his supervisor(s) aware that he desired to be chosen to participate in sea trials. However, he was never selected to participate in any sea trials in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so. Furthermore, the selection process for participating in sea trials has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

27. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at NGSS. NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS. This includes the following instances:

    a) Plaintiff observed racist graffiti in the restrooms on both banks of the shipyard the

Plaintiff Lester Thomas's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00832-LG-RHW

9

       entire time he worked at NGSS, from when he started in 1973 up until his retirement in 2002. The racist graffiti plaintiff observed included the word "nigger," references to the KKK, such as "If you want to be successful, join the KKK," and sexually coarse drawings and comments about Black men and women. NGSS was or should have been aware of the presence of the offensive racially derogatory writings, depictions, and/or graffiti; plaintiff was in the restroom at the same time as supervisory personnel, who should have observed the racist graffiti, as it was conspicuous and blatantly obvious.

   b) Plaintiff has had graffiti that was personally directed to him. The day plaintiff left the fab shop to assume the accuracy control position in 2000, an outline of a dead body appeared, drawn on the floor in his former work area. A co-worker complained to supervisory personnel, but, to plaintiff's knowledge, nothing was ever done in response to this complaint.

28. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS. NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS. This includes the following instances:

   a) Plaintiff has been called a "Black ass" and a "nigger" by White employees, including supervisors. D.R. Duiett, White supervisor, called plaintiff a "nigger" several times. Plaintiff complained to A.G. Duiett, White superintendent, who was D.R. Duiett's brother. A.G. Duiett said that D.R. Duiett was just "playing" and did not mean anything by calling plaintiff a "nigger," and, to plaintiff's

Plaintiff Lester Thomas's Complaint for            10
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

        knowledge, took no action in response to the complaint.

        b) D.R. Duiett also made statements to plaintiff such as, he hates "all niggers, not just one or two."

        c) Throughout his employment, plaintiff constantly heard White employees, including supervisors, make racist jokes and refer to Black employees as "niggers."

29. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to nooses in a number of places at NGSS. NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS. This includes the following instances:

        a) Plaintiff has observed nooses at NGSS, including nooses lying on welding machines in his work area.

        b) In the 2 to 3 years prior to his retirement in 2002, a White employee with whom Plaintiff worked, Brandon Owen, fashioned nooses in front of plaintiff and on several occasions threw the nooses around plaintiff's foot or neck.

30. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS. In addition, plaintiff was physically abused by his White supervisor, D.R. Duiett, who repeatedly kicked plaintiff, even after plaintiff asked him to stop. Plaintiff's complaint to superintendent A.S. Helton, also Duiett's cousin, was not taken seriously and was insufficient to remedy the situation. Helton responded only by telling plaintiff that Duiett was "playing."

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race.

Plaintiff Lester Thomas's Complaint for   11
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 26, incorporated as though fully set forth herein.

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

33. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

34. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace.  NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same.  NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 27 through 33, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

35. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

36. No plain, adequate, or complete remedy at law is available to plaintiff.  Monetary relief cannot adequately compensate the loss of promotional opportunities, experience, and careers with NGSS.  Similarly, monetary relief cannot adequately compensate the continued subjection to a racially hostile work environment.

37. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

12

## FIRST CLAIM FOR RELIEF

38. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 37 and further alleges for a first claim for relief as follows:

39. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

40. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 39 and further alleges for a second claim for relief as follows:

41. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS.  NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

42. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

43. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, plaintiff prays that this Court:

    a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

13

   in paragraphs 17 through 34 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

d) Grant such punitive, general, and special damages as proved at trial;

e) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

f) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated: September 29, 2006

SANDRA JARIBU HILL, Esq.
Mississippi Workers Center for
Human Rights

WILLIAM C. MCNEILL, III, Esq.
The Legal Aid Society-Employment
Law Center

Counsel for Plaintiffs

By:   /s/ William C. McNeill, III
WILLIAM C. McNEILL, III, Esq.

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

14

William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*
Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

Plaintiff Lester Thomas's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW

15

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552

　　　　　　　　　　　　　　　　　　　　　　　　　　 /s/ Laurel Kapros
　　　　　　　　　　　　　　　　　　　　　　　　　　Laurel Kapros

Plaintiff Lester Thomas's Complaint for                                                                                   16
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00832-LG-RHW